632 So.2d 272 (1994)
SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY, Appellants/Cross-Appellees,
v.
William MARKHAM, As Property Appraiser of Broward County, Appellee/Cross-Appellant, and
Broward County, a Political Subdivision of the State of Florida, and Joseph Rosenhagen, As Broward County Revenue Collector, Appellees.
No. 92-3433.
District Court of Appeal of Florida, Fourth District.
February 23, 1994.
*273 James W. McBride and Anne M. Stolle of Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Washington, DC, Harris R. Anthony of BellSouth Telecommunications, Inc., Miami, Peter Forman of Gustafson, Stephens, Ferris, Forman & Knight, P.A., Fort Lauderdale, and Richard W. Bell of BellSouth Corp., Atlanta, GA, for appellants/cross-appellees.
Gaylord A. Wood, Jr. of Wood & Stuart, P.A., Fort Lauderdale, for appellee/cross-appellant William Markham.
Robert A. Butterworth, Atty. Gen., Lee R. Rohe and Ralph R. Jaeger, Asst. Attys. Gen., Tallahassee, for appellee Dept. of Revenue, State of Fla.
STEVENSON, Judge.
Southern Bell Telephone and Telegraph Company ("Southern Bell"), appeals a final judgment approving the assessed value placed on its operating personal property for ad valorem tax purposes by the Broward County property appraiser ("property appraiser"). Southern Bell alleges that (1) the value placed on its operating personal property by the property appraiser for the 1989 tax year was excessive and, (2) that the property appraiser systematically failed to equalize the assessment of its operating property with that of other taxpayers in Broward County, thereby discriminating against Southern Bell in violation of equal protection under the United States constitution. Because this second claim posed a constitutional challenge to the assessment, the Florida Department of Revenue was joined as a party defendant pursuant to Section 194.181(5), Florida Statutes. We affirm the judgment of the trial court.

*274 Valuation
After hearing five days of testimony from various expert witnesses, the trial court determined that the market value of Southern Bell's tangible personal property located in Broward County was properly assessed at $708,813,000.00. Southern Bell argues that the value placed on the property by the property appraiser was much higher than market value. Southern Bell's challenge to the value at which the property appraiser assessed its property focuses chiefly on the appraiser's alleged failure to recognize the effects of rate regulation on the market value of the property. Southern Bell contends that the ratemaking process is at the heart of valuation for a regulated public utility because ratemaking controls earnings. Southern Bell is only permitted to earn a return on rate base. Simply stated, rate base for a public utility is the net book cost (original costs less book depreciation) of properties used for intrastate and interstate services minus accumulated deferred federal income taxes[1].
In short, Southern Bell argues that its personal property purchased with federal deferred income taxes should not be taxed because it is not allowed to earn a return on such property. To the contrary, the property appraiser maintains that the personal property of Southern Bell must be assessed in fee simple even though it may have been purchased with a source of funds on which the owner cannot earn a return.
Southern Bell's burden in this appeal is heavy. The trial court is bound to uphold a property appraiser's administrative determination of value if it is lawfully arrived at and within the range of reasonable appraisals, i.e., "if it is supported by any reasonable hypothesis of legality, even if another method is superior." Blake v. Xerox Corp., 447 So.2d 1348, 1350 (Fla. 1984). On appellate review, a trial court's findings of fact and conclusions of law are presumptively correct and should not be overturned unless clearly erroneous. Florida E. Coast Ry. Co. v. Dep't of Revenue, 620 So.2d 1051 (Fla. 1st DCA), rev. denied, 629 So.2d 132 (Fla. 1993).
The property appraiser's valuation, accepted by the trial court, is supported by competent expert testimony. The property appraiser's expert (a university professor emeritus who has taught extensively in the field of corporate finance including valuation of businesses) opined that net book cost of a regulated utility, plus deferred taxes if excluded from base rate, is its most appropriate valuation. He estimated that approximately 20% of Southern Bell's property is purchased with deferred taxes. Ratepayers receive the benefit of this financing structure through telephone service at a lower cost. Thus, the expert concluded that the customers have a property interest in the company through their deferred taxes because a certain part of the company's facilities are bought with these deferred taxes.
In Valencia Center, Inc. v. Bystrom, 543 So.2d 214 (Fla. 1989), the court stated that:
[T]he just valuation at which property must be assessed under the constitution and section 193.011 is synonymous with fair market value... . In arriving at fair market value, the assessor must consider, but not necessarily use, each of the factors set out in section 193.011. The particular method of valuation, and the weight to be given each factor, is left to the discretion of the assessor. .. .[2]
*275 There, the court rejected the property owners' attempt to have the assessments on its property reduced because more lucrative development of the property was restricted by a below market lease. The Florida Supreme Court reaffirmed "the general rule that in the levy of property tax the assessed value must represent all interests in the land" despite the existence of a mortgage, lease or sublease of the property. Id. at 217.
Similarly, in Century Village v. Walker, 449 So.2d 378 (Fla. 4th DCA), rev. denied, 458 So.2d 271 (Fla. 1984), the owner of a shopping center was dissatisfied with the ad valorem tax assessment levied because many of its tenants' leases were well below the current market value for leased commercial space. This court approved the assessment, even though in determining value the property appraiser considered the actual income produced by the tenants as well as the rental value of the property unencumbered by the leases. The court, relying on Department of Revenue v. Morganwoods Greentree, Inc., 341 So.2d 756 (Fla. 1976), noted that the effect of an encumbrance will not per se reduce the assessment value of property, but nevertheless becomes one of the many factors the assessor must consider in determining the value of the property to be taxed.
In Robbins v. Summit Apartments, Ltd., 586 So.2d 1068 (Fla. 3d DCA), rev. denied, 592 So.2d 682 (Fla. 1991), the court held that a taxpayer had to pay an assessment based on the fair market value of the property even though HUD restrictions limited the income derived on the property. There, the subject property was a 237-unit apartment which was regulated by HUD and rent controlled. In approving the valuation method of the property appraiser, the court stated that:
[T]he valuation given by the taxpayer's expert failed to represent all of the interests in the property and failed to value the property as though the taxpayer possessed the property in fee simple. The appraiser's valuation, on the other hand, was properly based upon the fair market value of the unencumbered fee. Id. at 1069.
In the instant case, there is no evidence that the property appraiser failed to consider all of the statutory factors enumerated in section 193.011, Florida Statutes. Indeed, the effects of rate regulation on Southern Bell's property is analogous to the below market leases encumbering the properties in Valencia and Century Village and the HUD restrictions encumbering the property in Robbins. In each of these situations the property appraiser considered the effects of the encumbrances on the property, but properly concluded that on balance with the many other factors under consideration, the encumbrances were not so genuinely disadvantageous as to diminish the overall fair value of the property. Based on such an analysis, and in view of the expert testimony in this record, Southern Bell has failed to show that the property appraiser did not follow the requirements of law or that the assessed value was not supported by a reasonable hypothesis of legality. See Blake v. Xerox; Robbins; Bath Club, Inc. v. Dade County, 394 So.2d 110 (Fla. 1981); Straughn v. Tuck, 354 So.2d 368 (Fla. 1977).

Equalization
Southern Bell maintains that its taxable personal property in Broward County was assessed at more than 100 percent of market value and at a higher ratio of assessed value to market value than that applied to other taxpayers generally. Southern Bell insists that by refusing to assess it at the same level as other Broward County taxpayers, the property appraiser singled it out for discriminatory treatment. "[T]he constitutional rights of a taxpayer are infringed if his property is assessed at a percentage of value substantially higher than the percentage at which all other property in the county is generally assessed...." Deltona Corp. v. Bailey, 336 So.2d 1163, 1168 (Fla. 1976).
*276 In order to determine the ratio of assessment to market value of other property in Broward County generally, Southern Bell performed a sales assessment ratio study. A sales assessment ratio study is a scientific comparison of the assessments of properties with the sales prices of a statistically reliable sample of properties that are actually sold in the taxing jurisdiction. Sales ratio studies are recognized as a valid means of determining assessment levels, but whether the study is properly designed and conducted is a question of fact to be gleaned from the evidence. Southern Bell Tel. & Tel. v. County of Dade, 275 So.2d 4 (Fla. 1973). The property appraiser in the proceedings below established that the sales assessment ratio study presented by Southern Bell was fatally flawed and unreliable. Among other deficiencies, sales were not verified, the study contained an insufficient number of commercial or industrial properties and the study included property sold as much as six months after the assessment date of January 1, 1989. In view of the evidence presented below, the trial court did not err in concluding that Southern Bell failed to meet its burden of affirmatively establishing that it is entitled to a further reduction based on equal protection. See Deltona.
Lastly, we have considered the matters raised in the cross-appeal and find them to be without merit. Accordingly, the judgment of the trial court is affirmed.
DELL, C.J., and POLEN, J., concur.
NOTES
[1] The accumulation of capital from deferred federal income taxes result because the IRS allows Southern Bell, for income tax purposes, to write off an accelerated amount of depreciation in the early years of an asset's life. Thus, the company pays less taxes, increases its cash flow and can utilize the funds to purchase tangible personal property. Of course, the company may eventually have to pay the balance of these taxes to the government.
[2] 193.011 Factors to consider in deriving just valuation.  In arriving at just valuation as required under s. 4, Art. VII of the State Constitution, the property appraiser shall take into consideration the following factors:

(1) The present cash value of the property, which is the amount a willing purchaser would pay a willing seller, exclusive of reasonable fees and costs of purchase, in cash or the immediate equivalent thereof in a transaction at arm's length;
(2) The highest and best use to which the property can be expected to be put in the immediate future and the present use of the property... .
(3) The location of said property;
(4) The quantity or size of said property;
(5) The cost of said property and the present replacement value of any improvements thereon;
(6) The condition of said property;
(7) The income from said property; and
(8) The net proceeds of the sale of the property, as received by the seller, after deduction of all of the usual costs and reasonable fees and costs of the sale... .