**STATE BOARD OF TAX COMMISSION-ERS, Appellant (Respondent below),**

v.

**TOWN OF ST. JOHN, et al., Appellees (Petitioners below).**

No. 49S10–9806–TA–340.

Supreme Court of Indiana.

Dec. 4, 1998.

Jeffrey A. Modisett, Attorney General, Jon Laramore, Deputy Attorney General, Indianapolis, for Appellant.

Thomas M. Atherton, Dutton & Overman, Indianapolis, Kenneth J. Falk, Indiana Civil Liberties Union, Indianapolis, Peter H. Donahoe, Hill Fulwider McDowell Funk & Mathews, P.C., Indianapolis, James K. Gilday, Wood Tuohy Gleason Mercer & Herrin, Indianapolis, Richard A. Waples, Indianapolis, for Appellees.

Landmark Appraisals, David L. Pippen, Indianapolis, Amicus Curiae.

DICKSON, Justice.

### ON PETITION FOR REVIEW

The State Board of Tax Commissioners ("State Board") appeals from the Indiana Tax Court's judgment regarding the validity of the Indiana property tax assessment system. We affirm in part and reverse in part.

This case initially arose in the Indiana Tax Court on individual petitions by three taxpayers from Marion County, James K. Gilday, Dimple Clarine Shelton, and William E. Wise, and a petition by the Town of St. John on behalf of a class of approximately fifty-seven of its residents. The Tax Court consolidated the petitions, conducted a bench trial in July of 1995, and found that Indiana's

current statutory system of property taxation was unconstitutional. *Town of St.John v. State Bd. of Tax Comm'rs*, 665 N.E.2d 965 (Ind.Tax 1996) ("*St. John I*"). Upon appeal by the State Board, we affirmed the Tax Court's holding that the General Assembly must provide for a uniform and equal rate of property assessment and taxation based on property wealth, noted that legislative discretion in the selection of valuation method is subject to judicial review, reversed the Tax Court's conclusion that the Indiana Constitution exclusively requires an absolute and precise fair market value system, and returned the case to the Tax Court to resume consideration of the remaining issues. *Boehm v. Town of St. John*, 675 N.E.2d 318, 328 (Ind. 1996) ("*St. John II*"). On remand, the Tax Court issued a preliminary opinion finding that components of Indiana's property tax valuation system violated the constitutional requirements, and it ordered the State Board to "make future real property assessments for purposes of taxation under a system that incorporates an objective reality." *Town of St. John v. State Bd. of Tax Comm'rs*, 690 N.E.2d 370, 398 (Ind. Tax 1997) ("*St. John III*"). Following a hearing to determine an appropriate deadline for bringing the assessment system into constitutional compliance, the Tax Court entered its final judgment which ordered the State Board to consider all competent evidence of property wealth in appeals filed with the county review boards on or after May 11, 1999, and remanded to the State Board for further consideration of the specific claims of the petitioners. *Town of St. John v.State Bd. of Tax Comm'rs*, 691 N.E.2d 1387, 1390 (Ind.Tax 1998) ("*St. John IV*").The State Board has petitioned for our review of the Tax Court decision, which is reflected in *St. John III* and *St. John IV*.[1]

To seek our review of a Tax Court decision, a party adversely affected must file a petition for review. Ind. Appellate Rule 18. If the petition is granted, we will ordinarily consider only the issues presented in the petition for review, and we thereafter modify the prior Tax Court decision only to the extent determined in our opinion on these issues. *St. John II*, 675 N.E.2d at 320.[2]

The State Board's petition for review alleges that the Tax Court's decision was in error in numerous respects. We granted review and construe the State Board's petition to present the following issues: (1) whether Indiana Code section 6–1.1–31–6(c) is unconstitutional; (2) whether the cost schedules used by the State Board to determine property value are unconstitutional; (3) whether the State Board must consider all competent evidence of property wealth in appeals filed on or after May 11, 1999; and (4) whether the Town of St. John had standing.

The authority and limitations regarding Indiana's system of property assessment and taxation are found in the Property Taxation Clause of the Constitution of Indiana:

> The General Assembly shall provide, by law, for a uniform and equal rate of property assessment and taxation and shall prescribe regulations to secure a just valuation for taxation of all property, both real and personal.

IND. CONST. art. X, § 1(a).[3] To discharge this constitutional responsibility, the General As-

---

1. The State Board initially filed a petition challenging the Tax Court's decision in *St. John III*, 690 N.E.2d 370 (Ind.Tax 1997). Subsequently, the State Board filed a second petition incorporating the claims of error in its prior petition and also asserting new claims challenging *St. John IV*, 691 N.E.2d 1387 (Ind. Tax 1998). The Tax Court opinions in *St. John III* and *St. John IV* all arise from the same proceeding, in which a final judgment was not entered until *St. John IV*. Thus, we view this as a single appeal from both Tax Court opinions.

2. This procedure is different from that applicable to our review of Court of Appeals decisions. Appellate Rule 11 provides that upon granting a petition to transfer from the Court of Appeals, the Supreme Court has jurisdiction of "all issues

[on appeal] as if originally filed" in this Court and that, unless otherwise specified, the grant of transfer automatically vacates the decision of the Court of Appeals. App. R. 11(B)(3).

3. This language resulted from a constitutional amendment adopted in 1966. The provision appeared in the 1851 Indiana Constitution as follows:

> The General Assembly shall provide by law for a uniform and equal rate of assessment and taxation; and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, excepting such only for municipal, educational, literary, scientific, religious or charitable purposes, as may be specially exempted by law.

sembly created an administrative agency, the State Board, and delegated to it the responsibility for establishing rules to classify and assess tangible property according to its "true tax value." IND.CODE §§ 6–1.1–30–1, 6–1.1–31–1, 6–1.1–31–5. The legislature does not explicitly define the term "true tax value" but delegates to the State Board the authority to define the term. IND.CODE § 6–1.1–31–6(c) ("True tax value is the value determined under the rules of the state board of tax commissioners."). However, it must be based upon specified statutory factors[4] "and any other factor that the board determines by rule is just and proper." IND.CODE § 6–1.1–31–6(b)(7). Thus, the assessment regulations and schedules prescribed by the State Board determine "true tax value." IND. AD-MIN. CODE tit. 50, art. 2.2 ("Title 50").

### 1. Constitutionality of the Statute

The State Board contends that the Tax Court erred in ruling that Indiana Code section 6–1.1–31–6(c) violates the Indiana Constitution.

▆▆▆▆ Our standard of review for alleged violations of the Indiana Constitution is well established. *St. John II*, 675 N.E.2d at 321. Every statute stands before us clothed with the presumption of constitutionality until clearly overcome by a contrary showing. *State v. Rendleman*, 603 N.E.2d 1333, 1334 (Ind.1992); *Adoptive Parents of M.L.V. & A.L.V. v. Wilkens*, 598 N.E.2d 1054, 1058 (Ind.1992); *Eddy v. McGinnis*, 523 N.E.2d 737, 738 (Ind.1988); *Miller v. State*, 517 N.E.2d 64, 71 (Ind.1987). The party challenging the constitutionality of the statute bears the burden of proof, and all doubts are resolved against that party. *Rendleman*, 603 N.E.2d at 1334; *Wilkens*, 598 N.E.2d at 1058; *Miller*, 517 N.E.2d at 71. If two reasonable interpretations of a statute are available, one of which is constitutional and the other not, we will choose that path which permits upholding the statute because we will not presume that the legislature violated the constitution unless the unambiguous lan-

guage of the statute requires that conclusion. *Price v. State*, 622 N.E.2d 954, 963 (Ind. 1993); *Smith v. Indianapolis St. Ry. Co.*, 158 Ind. 425, 427–28, 63 N.E. 849, 850 (1902).

Applying the Property Taxation Clause, the Tax Court found "the present system is unconstitutional" because, according to the State Board's own admission, "it [is] impossible under the present system to determine the system's compliance with the uniformity provision." *St. John III*, 690 N.E.2d at 376–77 (emphasis added). The Tax Court further found that, "[b]ecause the present system does not allow comparison of assessments to objective data, it cannot satisfy the constitutional requirements of uniformity and equality in the property assessment." *Id.* at 378 (emphasis added). The court observed, "True Tax Value is a figure produced by the application of a closed set of self-referential rules and formulas contained in Title 50. Everything needed to calculate True Tax Value is set forth in Title 50; evidence of value external to Title 50 is irrelevant." *Id.* at 374. Emphasizing its belief that the Indiana Constitution "requires a system of property assessment and taxation based upon a real world, objective measure of property wealth," the Tax Court concluded that "Indiana's True Tax Value system of property taxation under section 6–1.1–31–6(c) and Title 50 violates the Indiana Constitution . . . ." *Id.* at 398. In its implementing judgment entry in *St. John IV*, the Tax Court expressly characterized its prior opinion in *St. John III* as holding that the statutory provision, Indiana Code section 6–1.1–31–6(c), "is unconstitutional." *St. John IV*, 691 N.E.2d at 1388.

▆▆▆ We first observe that the clear thrust and rationale of the Tax Court's general determination of unconstitutionality is directed at the Title 50 regulatory system implementing "true tax value," not the statute itself. The statutory provision expressly referenced by the Tax Court in its finding of unconstitutionality states:

---

Ind. Const. art. X, § 1 (1851). The 1966 amendment supplemented the list of permissible exemptions to include intangible personal property, specified tangible personal property, and vehicles subjected to an excise tax. The 1966 modifications do not alter our analysis.

**4.** With respect to real property, the factors include property classification, size, location, use, depreciation, cost of improvements, and "productivity or earning capacity of land." IND.CODE § 6–1.1–31–6(b).

(c) With respect to the assessment of real property, true tax value does not mean fair market value. True tax value is the value determined under the rules of the state board of tax commissioners.

IND.CODE § 6–1.1–31–6(c). This subsection appears in the context of Indiana Code section 6–1.1–31–6 which establishes the standards for the State Board's real property assessment regulations. Although the Tax Court in *St. John III* does not explicitly identify the constitutional infirmity it finds in subsection 6(c),the language of this provision suggests that the Tax Court may understand Indiana Code section 6–1.1–31–6(c) to be contrary to this Court's decision in *St. John II*. We stated:

> While a careful and accurate fair market value assessment may well be the system closest to our constitution's requirements for uniform and equal rates of assessment and taxation and for just valuation, a system based solely upon strict fair market value is not expressly required either by the text of the constitution, by the purpose and intent of its framers, or by the subsequent case law.

*St. John II*, 675 N.E.2d at 327 (emphasis added).

If interpreted as an absolute prohibition upon considering fair market value as "true tax value," subsection 6(c) would be constitutionally infirm.[5] However, we observe that the language of this subsection is not unambiguous. Two reasonable interpretations are possible. It may be read either to command that "true tax value" may never consist of fair market value or to instruct that"true tax value" is not exclusively or necessarily identical to fair market value.

Other statutory provisions are instructive. With respect to the classification of both real property and improvements, the State Board regulations must provide for consideration of "[a]ny other factor that the board determines by rule is just and proper." IND.CODE §§ 6–1.1–31–6(a)(1)(ix), 6–1.1–31–6(a)(2)(viii). In addition, the legislature requires that the Board's assessment rules include instructions for determining "[t]he true tax value of real property based on the factors listed in this subsection and any other factor that the board determines by rule is just and proper." IND.CODE § 6–1.1–31–6(b)(7) (emphasis added). Similarly, in its orders to local assessing officials, the legislature instructs that "the township assessors may consider factors in addition to those prescribed by the state board of tax commissioners if the use of the additional factors is first approved by the board." IND.CODE § 6–1.1–31–5(b) (emphasis added). Clearly, the legislature intends for the State Board regulations to accommodate unenumerated factors that it finds just and proper.

Because a reasonable, constitutional interpretation of this statute is available, we construe Indiana Code section 6–1.1–31–6(c) to mean that "true tax value" is not exclusively or necessarily identical to fair market value. This provision does not prohibit the State Board from promulgating regulations in which "true tax value" is based, in whole or in part, upon property wealth. The apparent failure of the State Board's present regulations to have determined that fair market value is "just and proper" does not render the statutory provision unconstitutional.

We reverse the Tax Court's determination that Indiana Code section 6–1.1–31–6(c) is unconstitutional.

### 2. Constitutionality of Cost Schedules

The State Board contends that the Tax Court's conclusion that the Board's cost schedules [6] are unconstitutional is clearly er-

---

5. In a footnote to its discussion of the assessment of agricultural land, the Tax Court comments that "[o]ther classes of land, such as windbreaks, filter strips, forest lands, and wildlife habitats, are specifically valued at $1 per acre." *St. John III*, 690 N.E.2d at 373 n. 3 (citing IND.CODE §§ 6–1.1–6.2–9, 6–1.1–6.7–9, 6–1.1–6–14, and 6–1.1–6.5–8). The State Board observes that the Tax Court opinion "also implicitly invalidates several statutes setting values for special-use land such as forests and wildlife habitats." Preliminary Brief in Support of Petition for Review at 4.

Because this assertion is not supported by argument, however, we assume that the State Board did not intend to present this as an independent issue for our review.

6. Although the parties have referred to these as "cost tables," we employ the term "cost schedules," as did the Tax Court, which accords with the designations in the regulations. See, e.g., IND. ADMIN. CODE tit. 50, r. 2.2–7–11, r. 2.2–8–7, r. 2.2–9–6.

roneous. The Tax Court concluded that the schedules violate the Property Tax Clause of the Indiana Constitution because they do not result in a uniform and equal rate of property assessment and taxation and do not accurately measure property wealth. *St. John III*, 690 N.E.2d at 382.

In *St. John II*, this Court approved of the Tax Court's determination that " 'the framers of Article 10, § 1 intended that each taxpayer's property wealth bear its proportion of the overall property tax burden.' " *St. John II*, 675 N.E.2d at 324 (quoting *St. John I*, 665 N.E.2d at 970). However, we recognized that varying methods of valuation could be used and that uniformity of assessment method is not required, provided that the resulting valuations are just and the burdens are distributed with uniformity. *St. John II*, 675 N.E.2d at 327. We found:

> [T]he Indiana Constitution requires that our property tax system achieve substantially uniform and equal rates of property assessment and taxation and authorizes the legislature to allow a variety of methods to secure such just valuation.

*Id.* The uniform and equal rate of property assessment and taxation, we held, must be "based on property wealth." *Id.* at 328. However, we also emphasized that our state constitution does not require the property taxation system to be based solely on a fair market value. *Id.* at 327. Collectively, these principles require that the system provide rates of assessment that are substantially uniform and equal based on property wealth.

While expressly foregoing any appeal of the Tax Court's invalidation of the subjective elements of the present rule (e.g., neighborhood, condition, grade, obsolescence),[7] the State Board argues that no evidence in the record supports the Tax Court's ruling that the basic design of the cost schedules is unconstitutional.

The State Board's real property assessment rules are required by statute to include instructions for determining various factors, one of which is "the cost of reproducing improvements." Ind.Code § 6–1.1–31–6(b)(5). Pursuant to rules adopted by the State Board, this cost is determined by application of its cost schedules. Ind. Admin. Code tit. 50, r. 2.2–2–2(b) (assessing officials must follow the State Board's rules in assessing real property). The cost of reproduction to be applied in assessments is not the actual cost of reproducing an item, but rather the "reproduction cost" as specified in the State Board's cost schedules. *St. John III*, 690 N.E.2d at 373. As the Tax Court noted, the cost schedules are "the heart of the True Tax Value system." *Id.* at 377.

■ In reviewing a decision of the Tax Court, we "shall not set aside the findings or judgment of the Tax Court unless clearly erroneous." Ind. Tax Court Rule 10. This is the same standard of review as that provided in Indiana Trial Rule 52(A). We consider the evidence most favorable to the judgment on appeal and refrain from reweighing the evidence. *Chidester v. City of Hobart*, 631 N.E.2d 908, 910 (Ind.1994). Findings are clearly erroneous only when the record contains no facts to support them either directly or inferentially. *Gibson County Farm Bureau Coop. Ass'n, Inc. v. Greer*, 643 N.E.2d 313, 315 (Ind.1994); *Indianapolis Convention & Visitors Ass'n, Inc. v. Indianapolis Newspapers, Inc.*, 577 N.E.2d 208, 211–12 (Ind.1991). In conducting our review, we recognize that the Indiana Tax Court was established to develop and apply specialized expertise in the prompt, fair, and uniform resolution of state tax cases. *Indiana Dep't of State Revenue v. Caylor–Nickel Clinic, P.C.*, 587 N.E.2d 1311, 1313 (Ind.1992). Therefore, with regard to issues which are within the particular purview of the Tax Court, we exercise cautious deference. *Id.*

The foundation for the Tax Court's decision is its conclusion that the assessment system must be based on objectively verifiable data to enable a review of the assessment system to ensure uniformity and equality, and to ensure that individual taxpayers have a means to assert a personal "right of uniformity and equality" as to individual assess-

---

7. Noting that it has revised the subjective elements for the 2001 General Reassessment, the State Board "does not defend them in this appeal." Brief of Appellant at 14 n. 12. The State Board asserts that the regulations for the 2001 General Reassessment "will conceptually change Indiana's assessing system by adding market-value concepts." Brief of Appellant at 9.

ments. *St. John III*, 690 N.E.2d at 376 & n. 12. Upon this latter point, the Tax Court emphasized its view that, because the existing system precludes evidence of any value which is not found in the cost schedules or otherwise approved by the State Board, assessors are prevented from considering other relevant evidence of property wealth, thus undermining the system's ability to achieve uniformity and equality as applied to individual assessments. *Id.* at 376–77.

By instructing the General Assembly to "provide, by law, for a uniform and equal rate of property assessment and taxation" and to "prescribe regulations to secure a just valuation for taxation of all property," the Property Taxation Clause requires the creation of a uniform, equal, and just system. However, the constitutional text does not expressly provide a personal right of absolute uniformity and equality in assessment rate. We also note that this provision is not located in Article 1 of our state constitution, which generally protects individual liberty rights and limits government action.

As we noted in *St. John II*, when Article X was under consideration at the Constitutional Convention of 1850–51, the delegate who proposed it, Daniel Read, acknowledged the aspirational nature of the provision's language and implied "that he did not expect the full achievement of absolute and precise exactitude." *St. John II*, 675 N.E.2d at 323. Delegate Read emphasized, " 'The rule will be a part of the organic law, and the people and the Legislature will endeavor to work up to a rule so manifestly just and equitable.' " *Id.* at 323 (quoting 1 REPORT OF THE DEBATES AND PROCEEDINGS 946 (Dec. 4, 1850) (comments of Delegate Read)).

This express delegation of function to the legislature under the Property Taxation Clause is not unlike several others provided in our constitution. See, e.g., IND. CONST. art. VIII, § 1 (duty of the General Assembly to "provide, by law, for a general and uniform

system of Common Schools"); IND. CONST. art. IX, §§ 1, 2 (duty of General Assembly to "provide, by law, for the support of institutions for the education of the deaf, the mute, and the blind; and for the treatment of the insane," and to "provide institutions for the correction and reformation of juvenile offenders"). These constitutional provisions affirmatively require the legislature to enact laws for specified public purposes, subject to certain qualifications, but such provisions do not create entitlement rights for individuals seeking to benefit from the particular purposes or specified qualifications. See, e.g., *Ratliff v. Cohn*, 693 N.E.2d 530, 540 (Ind. 1998) (although Article IX, section 2 requires the legislature to provide institutions for juvenile offenders, it does not create an individual right for all such offenders to be housed only in such institutions); *Y.A. by Fleener v. Bayh*, 657 N.E.2d 410, 417 (Ind.Ct.App.1995) (legislative duty imposed by Article IX, section 1 to provide institutions for treatment of the insane does not impose "absolute duty of care" for individuals suffering from mental illness).

 We conclude that the Property Taxation Clause requires the General Assembly to provide for a system of assessment and taxation characterized by uniformity, equality, and just valuation based on property wealth, but the Clause does not require absolute and precise exactitude as to the uniformity and equality of each individual assessment. The system must also assure that individual taxpayers have a reasonable opportunity to challenge whether the system prescribed by statute and regulations was properly applied to individual assessments, but the Clause does not create a personal, substantive right of uniformity and equality. It does not establish an entitlement to individual assessments for abstract evaluation of property wealth, nor does it mandate the consideration of independent property wealth evidence in individual assessments or tax appeals.[8]

---

8. The fact that the Property Taxation Clause does not require the abstract evaluation of property wealth as to individual assessments or give rise to a substantive right to present property wealth evidence in tax appeals of individual assessments does not diminish the existing procedural rights of taxpayers to seek administrative and judicial review.

The Tax Court found that the assessment system violated the Due Course of Law Clause, Ind. Const. art. I, § 12, "because it deprives taxpayers of their right to introduce real world, objective evidence in order to challenge assessments." *St. John III*, 690 N.E.2d at 388. Although the State Board did not directly challenge this finding in its petition for review, our holding that the Prop-

■ As we noted in *St. John II*, legislative discretion to provide regulations to secure just valuation is limited by the constitutional requirements of uniform and equal rate of property assessment and taxation, and compliance with such limitations is subject to judicial review. *St. John II*, 675 N.E.2d at 328. Such judicial relief is available when the assessment system fails adequately to provide for uniformity and equality in general. For this reason, the Tax Court is correct to require that the State Board's assessment regulations be based on objectively verifiable data to enable review of the system to assure that it generally provides uniformity and equality based on property wealth.

The State Board argues that the requirement of objectively verifiable data "euphemistically mandates adoption of market value." Brief of Appellant at 16. The State Board contends that the Tax Court is incorrect if its decision, announced in *St. John III* and *St. John IV*, means that the assessment system must incorporate all three standard market-value measures of value noted by the Tax Court (comparable sales, reproduction cost minus depreciation, and income capitalization). See *St. John III*, 690 N.E.2d at 382 n. 27. The Board represents that its planned revisions of the assessment system would not satisfy such a standard.[9] The Tax Court declared: "The State Board must measure property wealth in order to meet the dictates of the Indiana Constitution. This can only be done through the application of objective data and an application of real world factors affecting property values." *Id.* at 382. Observing the three recognized valuation methods, the Tax Court acknowledges that "some valuation methods are inappropriate for some types of property." *Id.* at 382 n. 27. It authorizes the State Board to "assess certain property by certain methods to the exclusion of others." *Id.* The State Board's regulations are not required to use all three standard market-value measures of value in its assessment system.

However, as noted above, the system must provide rates of assessment that are substantially uniform and equal based on property wealth, and this requires that the regulations be grounded on objectively verifiable data, although "a system based solely upon strict fair market value is not expressly required." *St. John II*, 675 N.E.2d at 327. The State Board argued to the Tax Court that the system adequately determines property wealth by the use of separate cost schedules for various classes of property and by measuring the "value in use" of assessed property.

■ The Tax Court found that the present system's separate cost schedules for different types of property prevented uniformity and equality. *St. John III*, 690 N.E.2d at 377. To the extent the Tax Court's determination may be understood to assert that different procedures or cost schedules can never be used, we disagree. The General Assembly may adopt different methods of assessment for different classifications of property in order to achieve uniformity and equality. *Indiana State Bd. of Tax Comm'rs v. Lyon & Greenleaf Co.*, 172 Ind. App. 272, 277, 359 N.E.2d 931, 934 (1977) (citing *Clark v. Vandalia R.R. Co.*, 172 Ind. 409, 86 N.E. 851 (1909) (method of assessing railroad property permitted in order to secure a fair valuation of the whole property and an equitable distribution among the counties affected); *Board of Comm'rs of Johnson County v. Johnson*, 173 Ind. 76, 89 N.E. 590 (1909) (classification of banks permitted where practical effect is to place the classes on the same footing in taxing result); *State ex rel. Lewis v. Smith*, 158 Ind. 543,

---

erty Taxation Clause provides no such substantive right nullifies this finding.

9. The State Board asserts:

In planning for the 2001 General Reassessment, the State Board has proposed a rule that considers market-value information but does not incorporate all three approaches to market value. The cost tables are based on actual cost data, and they are applied at 100% of value so they will be objective, verifiable, and readily understandable to taxpayers. Adjustments to assessments for neighborhood, grade, and obsolescence have been changed to incorporate market value information and concepts. The rule permits taxpayers to use reproduction cost data in their appeals. But this system, which is far more oriented toward market value than the previous rule and which permits the introduction of one kind of market data in appeals (reproduction costs, but not sales or income), would not satisfy the Tax Court's strict market-value approach.
Brief of Appellant at 19–20.

64 N.E. 18 (1902) (statute permitting mortgage deduction on real estate)). The use of different methods does not alone make the system unconstitutional. However, although different methods may be used, the classification of the differing properties cannot be arbitrary but rather must be based upon differences naturally inhering in the property. *Lyon & Greenleaf,* 172 Ind.App. at 277, 359 N.E.2d at 934 (citing *State ex rel. Lewis,* 158 Ind. at 580, 64 N.E. at 20).

■ As to the "value in use" claim, the Tax Court found that, under the applicable cost schedules, "it is the physical characteristics of an improvement, not its use, which governs reproduction costs" and that, therefore, the system does not measure use. *St. John III,* 690 N.E.2d at 382. The Tax Court did not prohibit the evaluation of property wealth based upon value in use but rather found that the present system was defective in its methodology. *Id.* As the Tax Court noted, the constitution does not require an assessment to be based upon the highest and best use of the property. *Id.* at 379. Focusing upon the taxpayer's actual use of land and improvements, rather than the possible uses which potential purchasers may choose, is an altogether appropriate way to evaluate property wealth for the purpose of assessment and taxation under the Property Taxation Clause. We find that property valuation for assessment based upon value in use is a reasonable measure of property wealth. A uniform and equal assessment of land or improvements accurately based upon value in use would not offend constitutional requirements.

However, while it is constitutionally permissible for the assessment system to apply different valuation methods for differing property classifications, including the assessment of some classifications based upon value in use rather than upon highest and best use, the Property Taxation Clause requires that the property wealth assessment methodologies result in general uniformity and equality across all the classifications.

Independent from its statements regarding the issues of value in use, separate cost schedules, mandatory use of standard market-value measurement methods, and entitlement to individual assessments based on property worth, the Tax Court further concluded that the "true tax value" system in general violated the uniformity and equality requirements of the Property Taxation Clause of the Indiana Constitution. The Tax Court found that the current assessment system as a whole fails to use "*any method* to determine property wealth," *id.* at 381 (emphasis in original), and that the cost schedules "are arbitrary figures and formulas, determined by the State Board and applied to property by local assessors with little or no reference to actual value or worth," *id.* at 382. The Tax Court explains that, because the "system eschews real world, objective data, no verification of either equality or uniformity of taxation based on property wealth is possible." *Id.* at 376 n. 11.

The State Board contends that the Tax Court's determination is clearly erroneous. It argues that the cost schedules were based upon a commercially available valuation manual modified to account for actual costs in Indiana.

Citing the Report of the Indiana Fair Market Value Study ("DeBoer Report"), conducted at the direction of the State Board and admitted as State Board Exhibit 64C, the Tax Court found that "the State Board assesses different types of property unequally," noting that residential property was assessed at 62%, commercial property at 81%, industrial property at 72%, and agricultural property at 54%, of market value. *Id.* at 378 n. 17. Citing supporting evidence, the Tax Court found that the State Board has not identified any way to measure equality of taxation under the present system except by using market information. *Id.* at 379. As discussed *supra,* although each individual assessment need not consist of a separate valuation of fair market value, the State Board's assessment regulations must be based on objectively verifiable data to enable review of the system and to ensure that it generally provides for uniformity and equality based on property wealth.

As previously noted, *supra,* we cannot set aside the findings and judgment of the Tax Court unless clearly erroneous, a standard which requires that the record contain no facts supporting the judgment. We extend cautious deference to the Tax Court's special

expertise, and we do not reweigh the evidence but consider that which is most favorable to the judgment.

■ There exists evidence in the record to support the Tax Court's findings that the cost schedules lack sufficient relation to objectively verifiable data to ensure uniformity and equality based on property wealth, and to support its findings of significant lack of uniformity and equality across property classifications. The State Board has not demonstrated that these findings are clearly erroneous.

We affirm the Tax Court's determination that the existing cost schedules, lacking meaningful reference to property wealth and resulting in significant deviations from substantial uniformity and equality, violate the Property Taxation Clause of the Indiana Constitution. However, the Clause does not require the consideration of all property wealth evidence in individual assessments or appeals therefrom. It does not mandate the use of strict market value or the use of its three measurement standards. It does not prohibit the use of different assessment methodologies for differing property classifications, or assessment based on value in use, provided that the result is substantial uniformity and equality based on property wealth across all property classifications.

### 3. Use of Property Wealth Evidence

The Tax Court ordered the State Board to "make future real property assessments for purposes of taxation under a system that incorporates an objective reality," *St. John III*, 690 N.E.2d at 398, although the Tax Court did not set a deadline for compliance with this mandate. The court also ordered the State Board to "consider all competent real world evidence presented to the State Board by persons filing appeals [with county boards of review] on or after May 11, 1999," *St. John IV*, 691 N.E.2d at 1390, and that, in the interim:

(1) real property tax assessments shall be made in accordance with the current system, (2) any challenges to real property tax assessments shall be governed by the existing law, and (3) real property tax assessments are not subject to challenge on the

ground that the True Tax Value system violates the Indiana Constitution.

*St. John III*, 690 N.E.2d at 398–99.

Arguing that it is already in the process of drafting and promulgating a rule to implement a new assessment system under which all properties will be reassessed by March 1, 2001, the State Board asks this Court to permit assessments and appeals to continue under the existing rules until the new system is operative and to reverse the Tax Court's order requiring "real world evidence" after May 11, 1999. We grant equivalent relief on other grounds.

■ As explained *supra*, the Property Taxation Clause of the Indiana Constitution does not establish a substantive right to individual assessments evaluating property wealth, nor does it mandate the consideration of independent property wealth evidence in individual tax appeals. Because persons filing tax appeals possess no constitutional entitlement to present what the Tax Court described as "competent real world evidence," we reverse the Tax Court's order that the State Board must consider such evidence. The State Board's request that the deadline be vacated is thus moot.

### 4. Standing for Town of St. John

Finally, the State Board argues that the claims brought by the Town of St. John were never properly before the Tax Court and should be dismissed. This issue was raised in *St. John II*, where we determined that the State Board had failed to present the issue for review in accordance with Indiana Appellate Rule 18. 675 N.E.2d at 320 n. 4. In *St. John II*, because we had not granted review to consider the issue, we declined to disturb the Tax Court's finding in *Bielski v. Zorn*, 627 N.E.2d 880 (Ind.Tax 1994), a procedural antecedent to the present case, that the Tax Court had subject matter jurisdiction. *St. John II*, 675 N.E.2d at 320 n. 4. We decline the State Board's invitation to revisit this issue.

### Conclusion

The judgment of the Tax Court is affirmed in part and reversed in part. We remand this cause to the Tax Court with instructions

to modify its Order and Judgment Entry of March 2, 1998, which remanded this cause to the State Board to consider "any real world evidence," *St. John IV*, 691 N.E.2d at 1390, and for further proceedings consistent with this opinion.[10]

SHEPARD, C.J., and SELBY, J., concur.

SULLIVAN, J., concurs and dissents with separate opinion.

BOEHM, J., not participating.

SULLIVAN, Justice, concurring and dissenting.

Today we find it necessary to join the Tax Court in defining the parameters of state tax policy by declaring part of the property tax system unconstitutional. While there can be no doubt of our power to do so, separation of powers demands cautious use of it. See generally *Indiana Wholesale Wine & Liquor v. State*, 695 N.E.2d 99, 107 (Ind.1998); *Citizens Nat'l Bank of Evansville v. Foster*, 668 N.E.2d 1236, 1241 (Ind.1996).[11] I can think of no area where we can be more confident of the ability of the normal democratic processes working as they should than in taxation. Residential, commercial, industrial and agricultural interests can well pursue and protect their respective interests in state tax policy before the executive and legislative branches without judicial intervention.

The decision to address the merits having been made, I concur in parts 1, 3 and 4 of the majority's opinion. I also agree with much of part 2. In particular, I agree with its conclusion that the Indiana property tax assessment system does not violate art. I, § 12, of the Indiana Constitution and that art. X, § 1, does not create a personal substantive right of uniformity and equality. I also concur that it is constitutionally permissible for the assessment system to apply different valuation methods for differing property classifications, including the assessment of some classifications based upon value in use rather than upon highest and best use.

However, I respectfully dissent from the court's conclusion in part 2 that the cost schedules for buildings and other improvements used by the Tax Board at the time relevant to this litigation are unconstitutional. The schedules were created by taking cost information from a national commercial appraisal guide for developing replacement costs, depreciated values and insurable values of buildings and other improvements. The cost data in the guide was then taken into the field where it was tested and validated against known construction costs here in Indiana. Based on the field testing and validation, the cost data was then adjusted if necessary to reflect actual costs in Indiana. The resulting cost schedules were then applied to all classes of property. See Record at 1144–1147 (testimony of consultant who developed cost schedules); Respondent's Exh. 5 (Marshall Valuation Service (valuation manual compiled by the firm of Marshall & Swift, Los Angeles, CA)). Contrary to the majority's conclusion, this approach appears to me to be based on objectively verifiable data (national cost data, adjusted for actual Indiana costs), applied uniformly across property classifications. I see no violation of art. X, § 1, of the Indiana Constitution.

Although I disagree with the majority's analysis of the cost schedules issue, I note that the Tax Board has advised us that its rules governing the next reassessment "will conceptually change Indiana's assessing system by adding market-value concepts."

---

**10.** In addition to responding to the State Board's claims, the taxpayers attempt to raise several issues in their brief. Review of tax court decisions is available in this Court only by filing a petition for review pursuant to Appellate Rule 18. See *supra* note 2 and accompanying text. This rule provides "[a]ny party adversely affected by a final decision of the Tax Court" an opportunity to petition for review of that decision. App. R. 18(C). The taxpayers filed no petition for review of any issues in this case. Accordingly, we decline to address any issues not presented in the petition for review.

**11.** Both of these cases address the duty of the court to avoid deciding a constitutional question when the case can be resolved on other-than-constitutional grounds. I respectfully suggest that the issue of cost schedules—the only aspect of the property tax system found unconstitutional—could have been resolved on grounds of mootness or by applying administrative law principles.

Brief of Appellant at 9. For this reason, I see the issue as effectively moot.