**BISHOP, C. Franklin and Suzanne H., Petitioners,**

v.

**STATE BOARD OF TAX COMMISSIONERS, Respondent.**

**No. 49T10–9904–TA–37.**

Tax Court of Indiana.

Feb. 14, 2001.

---

David L. Pippen, Attorney at Law, Indianapolis, IN, Attorney for Petitioner.

Steve Carter, Attorney General of Indiana, Joel Schiff, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

Petitioners C. Franklin and Suzanne H. Bishop appeal the final determination of the State Board of Tax Commissioners (State Board) establishing the assessed value of their condominium as of March 1, 1995. The Bishops present two issues for the Court's consideration, which the Court restates as:

I. Whether, in assessing the Bishops' condominium, the State Board applied its regulations in an unconstitutional manner, resulting in an inequitable and unjust assessment in violation of the Indiana Constitution, art. X, § 1;[1] and

II. Whether the State Board erroneously denied a grade adjustment for the Bishops' condominium.

## FACTS AND PROCEDURAL HISTORY

The Bishops own a condominium in Elkhart County, Indiana, that was assessed at $25,400, as of March 1, 1995 by the township assessor. The County Board of Review affirmed this value on March 20, 1997. The Bishops, via their tax representative Landmark Appraisals, Inc. (Landmark), filed a Form 131 petition for review of assessment with the State Board on April 22, 1997. In this petition, the Bishops stated that the State Board's assessment methodology was unconstitutional and made the following assertions regarding the assessment of the condominium: (1) an "Obsolescence factor needs to be applied to correct assessment inequities when compared to older homes"; (2) the "grade is overstated"; (3) "Neighborhood rating is excessive"; and (4) a "Negative influence factor [is] needed for land value." (Joint Ex. 1, State Bd. Tr. at 3–4.) On March 3, 1998, the State Board conducted a hearing on the Bishops' petition. The State Board issued its final determination on February 23, 1999, declining to adjust the condominium's assessed value.

The Bishops filed this original tax appeal on April 7, 1999. The Court conducted a trial on September 9, 1999, and heard oral arguments from the parties on May 5,

2000. Additional facts will be supplied where necessary.

## ANALYSIS AND OPINION

### Standard of Review

◼ The Court gives great deference to the State Board's final determinations when the State Board acts within the scope of its authority. *Wetzel Enters., Inc. v. State Bd. of Tax Comm'rs,* 694 N.E.2d 1259, 1261 (Ind. Tax Ct.1998). Accordingly, this Court reverses final determinations of the State Board only when those decisions are unsupported by substantial evidence, are arbitrary or capricious, constitute an abuse of discretion, or exceed statutory authority. *Id.* The taxpayer bears the burden of demonstrating the invalidity of the State Board's final determination. *Clark v. State Bd. of Tax Comm'rs,* 694 N.E.2d 1230, 1233 (Ind. Tax Ct.1998).

### Discussion

### I. Uniformity of Assessments

The Bishops claim that the State Board unconstitutionally applied its assessment regulations in assessing their condominium. The Bishops contend that they "presented significant testimony and evidence establishing [that] the subject property suffers from a general over-assessment as a newer residential property." (Pet'r Br. at 7.) The Bishops assert that newer homes constructed within their township have been assessed at higher values than older homes. This, the Bishops maintain, violates the Property Taxation Clause of the Indiana Constitution, art. X., § 1, which provides that "The General Assembly shall provide, by law, for a uniform and

---

1. The Bishops also claim that the State Board's assessment regulations in general violate both the United States Constitution and the Indiana Constitution. However, the fact that the subject property was assessed under an unconstitutional regulation does not mean the assessment will be invalidated on that basis. *Whitley Prods., Inc. v. State Bd. of Tax*

*Comm'rs,* 704 N.E.2d 1113, 1121 (Ind. Tax Ct.1998) (citations omitted), *review denied.* "Real property must still be assessed, and, until the new regulations are in place, must be assessed under the present system." *Id.* Therefore, the Court will not address the Bishops' facial constitutional challenges.

equal rate of property assessment and taxation and shall prescribe regulations to secure a just valuation for taxation of all property, both real and personal."

■ As proof of this alleged discrepancy, the Bishops submitted at the administrative hearing a "sales ratio study" (Study), among other items. (Resp't Ex. 1.) The Study was prepared and submitted by Steven M. Hay, an appraiser for Landmark. The Study examined twenty-two older homes, finding that these homes had an average ratio of assessed value to sales value of 14%. The Study also examined twenty-four newer homes. The average ratio of assessed value to sales value for these homes, the Study shows, is 22.9%. Hay testified at trial that the Study demonstrates a "vast disparity in equitableness and uniformity [of assessments between] older homes and newer homes." (Trial Tr. at 31.) To remedy this alleged disparity, Landmark requested that the State Board "reduce the total assessment of the subject newer property by 38.9%." (Resp't Ex. 1.) Hay explained that the Form 131's requests for obsolescence, grade and neighborhood rating adjustments, as well as for application of a negative influence factor, were suggested means for meeting this 38.9% reduction. (Trial Tr. at 42–43). *See also* (Joint Ex. 1, Final Determination at 2–3, ¶¶ 8–14.)

■ Although the Court will not entertain facial challenges to the State Board's regulations, it does consider as applied challenges. *Dana Corp. v. State Bd. of Tax Comm'rs,* 694 N.E.2d 1244, 1247 (Ind. Tax Ct.1998). In order to succeed with an as applied challenge, a taxpayer must present specific evidence that an assessment is unconstitutional as applied to him. *Id.* The application of regulations in an unconstitutional manner constitutes an abuse of discretion by the State Board. *Bielski v. Zorn,* 627 N.E.2d 880, 886 n. 14 (Ind. Tax Ct.1994).

In *Kemp v. State Board of Tax Commissioners,* 726 N.E.2d 395 (Ind. Tax Ct.2000), the Court considered a challenge similar to the one at bar. The taxpayers in *Kemp* presented a sales ratio study purporting to show that newer homes in LaPorte, Indiana, were on average assessed at a higher value than older homes. The Court observed that sales ratio studies are "designed to compare assessed value to market value [of] property" and are "undertaken principally for evaluating assessment accuracy and achieving tax equalization." *Kemp,* 726 N.E.2d at 403 (quoting INSTITUTE OF PROPERTY TAXATION, PROPERTY TAXATION 154 (Jerrold F. Janata ed., 2d ed.1993)). *See also Southern Bell Tel. and Tel. Co. v. Markham,* 632 So.2d 272, 276 (Fla.Dist.Ct.App.1994) ("A sales assessment ratio study is a scientific comparison of the assessments of properties with the sales prices of a statistically reliable sample of properties that are actually sold in the taxing jurisdiction."), *review denied.* Next, the Court noted that Indiana does not value property based upon its market value; rather, a property's assessed value is based on its reproduction cost as determined by the State Board's regulations. *Kemp,* 726 N.E.2d at 403 (citations omitted). Given this fact, the Court reasoned that the taxpayers were obligated to show how use of market information in their sales ratio study demonstrated that the State Board's regulations, as applied, violated their right to an equal and uniform assessment. *Id.*

The taxpayers in *Kemp* failed to persuade this Court that a "study based on market values can validly demonstrate the alleged inequity of assessments made under Indiana's system." *Id.* The taxpayers had asserted that a sales ratio study does not establish a value but instead measures a deviation from a standard. *Id.* However, the Court noted that this explanation missed the point, because the "deviations measured by the ratios in the [sales ratio study] represent a comparison of two 'values'—a property's market value and its assessed value." *Id.* at 403–04. The taxpayers, the Court held, failed to sufficiently explain how the sales ratio

study demonstrated uniformity of assessments calculated using Indiana's true tax value system. *Id.* at 404. *Accord Bernacchi v. State Bd. of Tax Comm'rs*, 727 N.E.2d 1133, 1138 (Ind. Tax Ct.2000).

In light of Indiana's true tax value system, the State Board in the present case viewed the Bishops' Study as "immaterial to the propriety of the [condominium's] assessment" and concluded that no change in the condominium's assessed value was warranted. (Joint Ex. 1, Final Determination at 9, ¶ 30.) Hay disagreed with this determination. He stated that the purpose of the Study was to "establish a standard that determine[s] the equitableness and uniformity of the residential class of assessments in the Indiana true tax value assessment system." (Trial Tr. at 24.) In other words, Hay contends that use of market data (i.e., sales information) establishes a standard against which deviations can be measured, and the Study measures "deviations between the various properties in a class [of residential properties] from that standard." *Id.* In addition, Hay asserted that use of sales ratio studies is a standard technique for measuring deviations in assessment. *Id.*

The Bishops' brief echoes Hay's remarks, stating that the Study "uses an established baseline for comparisons and determinations of uniformity in general classifications." (Pet'r Br. at 7.) In addition, the Bishops assert that the Indiana Supreme Court, in *State Board of Tax Commissioners v. Town of St. John*, 702 N.E.2d 1034, 1042 (Ind.1998) (*St. John* V), "upheld the Tax Court finding [in *Town of St. John v. State Board of Tax Commissioners*, 690 N.E.2d 370, 379 (Ind. Tax Ct.1997) (*St. John* III), aff'd in part, reversed in part, 702 N.E.2d 1034 (Ind.1998)] that the only presented method for determining [c]onstitutionally required uniformity and equality is with reference to market data." (Pet'r Br. at 8.) Accordingly, the Bishops posit, "It is only logical that independent evidence of a lack of uniformity and equality within a general classifica-

tion, based in market data, can likewise be utilized in this matter." *Id.* The Bishops thus maintain that because the State Board, as found in *St. John* III and affirmed in *St. John* V, has measured equality and uniformity of assessments by reference to market data and has identified no other means to do so, they should be allowed to reference market information in their Study to likewise measure the equality and uniformity of assessments within their township.

The taxpayers in the present case have not sufficiently explained how their Study demonstrates a lack of equality and uniformity of residential assessments under Indiana's true tax value system. *Kemp,* 726 N.E.2d at 403–04; *Bernacchi,* 727 N.E.2d at 1138. The standard against which deviations are measured in a sales ratio study is based upon market information, and the State Board's regulations for assessing improvements generally do not allow for application of market information. *See* IND.ANN.CODE § 6–1.1–31–6(c) (West 2000) ("With respect to the assessment of real property, true tax value does not mean fair market value. True tax value is the value determined under the rules of the [State Board].")*. Cf. Barker v. State Bd. of Tax Comm'rs,* 712 N.E.2d 563, 572 (Ind. Tax Ct.1999) ("[E]vidence of actual reproduction cost may have relevance in certain cases.") (citations omitted). As noted by this Court in *Kemp,* a "sales ratio study, prepared using professionally acceptable standards, would measure the uniformity of assessments under a market based assessment system." 726 N.E.2d at 404. *See also* INSTITUTE OF PROPERTY TAXATION, *supra* at 154 (listing various uses of sales ratio or "assessment-ratio" studies); *Southern Bell Tel. and Tel.,* 632 So.2d at 276 ("Sales ratio studies are recognized as a valid means of determining assessment levels."). However, the Bishops have not demonstrated the relevance of a sales ratio study in measuring the accuracy of assessments under the true tax value system.

Moreover, the Bishops' reliance upon *St. John* III & V is misplaced. The Supreme Court in *St. John* V affirmed this Court's findings that the State Board's "cost schedules lack sufficient relation to objectively verifiable data to ensure uniformity and equality based on property wealth" and that there existed a "significant lack of uniformity and equality across property classifications." *St. John* V, 702 N.E.2d at 1043. Based on these findings, the Supreme Court agreed that the State Board's cost schedules violate the Property Taxation Clause. *Id.* However, the Supreme Court further held that the Property Taxation Clause "does not require the consideration of all property wealth evidence in individual assessments or appeals therefrom" and "does not mandate the use of strict market value." *Id.* In short, the Supreme Court in *St. John* V, although not prohibiting it, did not require the State Board to consider sales information in the assessment of property or as part of the assessment appeals process. Thus, *St. John* V does not support the Bishops' claim that their Study—which relies upon market information—should be admissible to demonstrate a lack of uniformity and equality of assessments in their township, where the assessments in question were made pursuant to Indiana's true tax value system.[2]

■ The Study was the Bishops' only evidence with respect to their as applied constitutional challenge. The State Board did not abuse its discretion in declining to reduce the assessed value of the Bishops'

condominium based upon the Study. Without it, the Bishops lack any specific evidence of probative value showing that the State Board's regulations were unconstitutionally applied in assessing their condominium.[3] Therefore, the Bishops' constitutional claim fails.

## II.  Grade

The Bishops challenge the B grade assigned to their condominium, requesting application of a C grade instead. (Pet'r Br. at 6–7; Pet'r Ex. 2; Trial Tr. at 35.) *See also* (Joint Ex. 1 at 8, Property Record Card.) The regulations describe B grade homes in part as "architecturally attractive and constructed with good quality materials and workmanship." IND.ADMIN.CODE tit. 50, r. 2.2–7–6(d)(2) (1996). In addition, a B grade "indicates a multiplier of one hundred twenty percent (120%)" that is applied to the improvement's base reproduction cost. *Id.*, r. 2.2–7–6(e)(2). A C grade home is "moderately attractive and constructed with average quality materials and workmanship" and has a corresponding multiplier of one hundred percent. *Id.*, r. 2.2–7–6(d)(3) & 6(e)(3).

■ When taxpayers contest the grade assigned an improvement, they must offer probative evidence sufficient to establish a prima facie case concerning the alleged assessment error. *CDI, Inc. v. State Bd. of Tax Comm'rs*, 725 N.E.2d 1015, 1019 (Ind. Tax Ct.2000); *see also Western Select Properties v. State Bd. of Tax Comm'rs*, 639 N.E.2d 1068, 1075 (Ind. Tax

---

2.  The Court does not conclude that a properly conducted and verified sales ratio study would not be a valid measure of uniformity when a taxing authority considers preparation of an equalization order. *See* IND.CODE ANN. §§ 6–1.1–13–6 to –8 (2000) (equalization by county assessor of assessed values in and between various townships); IND.CODE ANN. §§ 6–1.1–14–4 to –9 (2000) (equalization by State Board of assessed values within any county or state as a whole).

3.  Along with their Study, the Bishops submitted to the State Board a copy of page thirteen

from the "Report of the Indiana Fair Market Value Study." (Resp't Ex. 1.) This page, however, was not admissible as proof that the Bishops' condominium was incorrectly assessed. The fair market value study was authorized by the General Assembly pursuant to Pub.L. No. 63–1993. This act specifically provides that the "report and data collected in the study may not be used in a ... review of assessment under ... IC 6–1.1–15." Therefore, the Bishops could not rely upon the report to help establish their constitutional claim. *See Kemp v. State Bd. of Tax Comm'rs*, 726 N.E.2d 395, 404 n. 11 (Ind. Tax Ct.2000).

Ct.1994). Conclusory statements are not probative evidence. *CDI*, 725 N.E.2d at 1019. "Furthermore, mere references to photographs or regulations, without explanation, do not qualify as probative evidence." *Sterling Mgmt.-Orchard Ridge Apartments v. State Bd. of Tax Comm'rs*, 730 N.E.2d 828, 838 (Ind. Tax Ct.2000). Similarly, marks on a grade specification table, *see* IND.ADMIN.CODE tit. 50, r. 2.2–7–6 (1996), are not probative as to an improvement's grade. *Kemp*, 726 N.E.2d at 401; *Sterling Mgmt.*, 730 N.E.2d at 839.

■ On the issue of grade, the Bishops submitted the following evidence: (1) a photograph of the front side of the condominium; (2) a copy of pictures of sample C grade residential homes taken from the State Board's assessment manual, with circles drawn around four of the homes, *see* IND.ADMIN.CODE tit. 50, r. 2.2–7–10 (1996); (3) a sample property record card prepared by Landmark that applies a C grade to the condominium; and (4) a copy of the State Board's grade specification table, with check-marks and a few circles located predominately by the descriptions in the C grade column. (Resp't Ex. 1; Pet'r Ex. 2.)

Hay testified at trial "I presented [Landmark's] opinion of the grade specification table along with photographs of what [Landmark] felt represented the subject property." (Trial Tr. at 33.) Hay stated that he viewed the exterior of the condominium and talked to its builder about specific aspects of the building's construction. (Trial Tr. at 34.) Further, he "looked at the photographs in the manual, and through [his] experience determined [the condominium] was a C grade home." *Id.* Moreover, according to Hay, he did not merely count the check-marks on the grade specification table to come up with a recommended grade; rather, he reported that the check-marks "would indicate that [the condominium is] very possibly a C grade home." (Trial Tr. at 35.)

The Bishops' evidence is not probative as to grade. The evidence presented is conclusory in nature. Without further ex-

planation, the photograph, circled grade examples and opinion testimony from Hay provide the Court with no guidance whatsoever as to what was the appropriate grade to assign to the condominium. The Court will not engage in guesswork to ascertain how the evidence proffered demonstrates the quality and workmanship of the subject improvement. *See CDI*, 725 N.E.2d at 1020 ("The Court refuses to do [the taxpayer's] work for it.").

The check-marked grade specification table is likewise conclusory and thus nonprobative on its face. Hay explained the basis for the marks at trial, testifying that his analysis was guided by descriptions provided by the condominium's builder. However, these descriptions given at trial were limited to three items. The first item was foundation, which he described as reinforced concrete with drain tiles. (Trial Tr. at 38.) "Concrete" and "Drain tile" are both listed under the B and C grade categories on the table. The second item was ground slab, which was described as a four-inch concrete slab on a gravel base; this specification is also found in both the B and C grade columns. (Trial Tr. at 39.) However, the builder apparently "felt" that the C column was appropriate. (Trial Tr. at 39.) The third item was structural floors; in this category, the B grade category is marked. (Trial Tr. at 39.) *See also* (Pet'r Ex. 2.) Even if considered probative, this evidence does not establish a prima facie case as to grade. The first two items, which are appropriate for both B and C grades, are inconclusive as to the proper grade and the third item favors a B grade finding. *Cf. Freudenberg–NOK General Partnership v. State Bd. of Tax Comm'rs*, 715 N.E.2d 1026, 1030 (Ind. Tax Ct.1999) (noting that "feelings" neither constitute the requisite basis for upholding a final determination nor qualify as substantial evidence), *review denied.*

■ The Bishops failed to submit probative evidence sufficient to establish a prima facie case as to grade. Consequent-

ly, the State Board was under no obligation to support its final determination with substantial evidence. *CDI*, 725 N.E.2d at 1021. The Bishops' challenge of the State Board's grade determination fails.[4]

### CONCLUSION

For the aforementioned reasons, the State Board's final determination in this matter is AFFIRMED in all respects.

---

4. The State Board's final determination denies the Bishops' claims with respect to obsolescence, neighborhood rating and land value. (Joint Ex. 1, Final Determination at 11, 15, ¶¶ 42, 61 & 62.) The Bishops raised none of these issues in their briefs and submitted no probative evidence on these issues at trial. At trial, Hay testified that an obsolescence adjustment was warranted for the condominium, because the inequitable assessments between older and newer homes in the township qualified as an "extreme circumstance." (Trial Tr. at 36.) Hay is correct that an extreme circumstance must be present in order to grant the condominium an obsolescence adjustment. INDIANA ADMIN.CODE tit. 50, r. 2.2–7–10 (1996) provides that there "must be an extremely abnormal circumstance involved with a residential dwelling before obsolescence depreciation applies." However, Hay neither demonstrated a disparity of assessments in the township, *see supra*, section I, nor explained how such a disparity, even if present, qualified as an "extremely abnormal circumstance" under the applicable regulation. *See Kemp v. State Bd. of Tax Comm'rs*, 726 N.E.2d 395, 402–03 (Ind. Tax Ct.2000) (affirming State Board's denial of obsolescence adjustment for residential property, where taxpayers presented no evidence that property suffered from an extremely abnormal circumstance). Furthermore, Hay admitted that he presented no evidence as to neighborhood rating or negative influence factors at the administrative level; he explained that these proposed adjustments were "merely suggestions." (Trial Tr. at 43.) These suggestions, without further evidence, remain mere suggestions and thus do not qualify as probative evidence. *See Herb v. State Bd. of Tax Comm'rs*, 656 N.E.2d 890, 893 (Ind. Tax Ct.1995). The State Board's final determinations on these issues must stand.