BARTH, INC., Petitioner,

v.

**STATE BOARD OF TAX COMMISSIONERS,** Respondent.

No. 49T10–9905–TA–127.

Tax Court of Indiana.

Oct. 16, 2001.

---

---

David L. Pippen, Attorney at Law, Indianapolis, IN, Attorney for Petitioner.

Steve Carter, Attorney General of Indiana, Kathryn Symmes Kirk, Deputy Attorney General, Indianapolis, IN, Attorney for the Respondent.

FISHER, J.

Barth, Inc. (Barth) appeals the April 23, 1999 final determination of the State Board of Tax Commissioners (State Board) that assessed Barth's commercial buildings for the March 1, 1989–91 assessment dates. Barth raises various issues, which the Court consolidates and restates as: whether Barth is entitled to adjustments to the base rates used to assess its buildings.[1]

## FACTS AND PROCEDURAL HISTORY

The Court has previously reviewed the facts of this case in *Barth, Inc. v. State Bd. of Tax Comm'rs*, 699 N.E.2d 800, 801 (Ind. Tax Ct.1998) (*Barth I*), *reh'g denied.* Therefore, the Court will briefly review only the relevant factual and procedural history.

On December 20, 1991, Barth filed six Form 133 Petitions to Correct an Error (133 Petition) with the Kosciusko County Auditor (County Auditor). In its petitions, Barth claimed that the base rates used to calculate the assessments on its commercial buildings in Milford, Indiana for the March 1, 1989–91 tax years were in error.[2] Local assessing officials denied Barth's 133 Petitions on January 13, 1992. The County Auditor forwarded the petitions to the State Board for final determination.

On November 22, 1996, the State Board, without substantively reviewing Barth's claims, denied Barth's 133 Petitions on the ground that any correction of the alleged errors would require the use of subjective judgment, which it deemed uncorrectable in a 133 Petition. *Barth I, Id.* at 801–2. Barth then filed an original tax appeal with this Court, and a trial was held on December 22, 1997. *Id.* at 801. This Court subsequently held that the 133 Petitions were an appropriate method to correct any objective errors in Barth's assessment and remanded the case to the State Board to evaluate whether the base rate calculations assigned to Barth's commercial buildings were erroneous *Id.* at 803.

---

1. Barth also argues that its assessment should be voided because portions of Indiana's regulations for taxing tangible property have been declared unconstitutional. In 1998, the Indiana Supreme Court affirmed this Court's determination that "the existing cost schedules ... violate the Property Taxation Clause of the Indiana Constitution." *State Bd. of Tax Comm'rs v. Town of St. John*, 702 N.E.2d 1034, 1043 (Ind.1998). That same year, this Court declared that "[r]eal property must still be assessed, and, until the new regulations are in place, must be assessed under the present system." *Whitley Prods., Inc. v. State Bd. of Tax Comm'rs*, 704 N.E.2d 1113, 1121 (Ind. Tax Ct.1998), *trans. denied; see also Town of St. John v. State Bd. of Tax Comm'rs*, 729 N.E.2d 242, 246 & 251 (Ind. Tax Ct.2000) (ordering real property in Indiana to be reassessed under constitutional regulations as of March 1, 2002 and providing that until then, "real property tax assessments shall be made in accordance with the current system"). The Court, therefore, will not analyze Barth's state constitutional claim in this opinion.

Barth also contends that because Indiana's system of taxing tangible property is not "based upon objectively verifiable data," (Pet'r Br. at 11), Barth's due process rights under the Fifth and Fourteenth Amendments to the U.S. Constitution are violated. This Court has in the past rejected legal arguments analogous to Barth's. *See Town of St. John v. State Bd. of Tax Comm'rs*, 690 N.E.2d 370, 388–97 (Ind. Tax Ct.1997), *reversed in part on other grounds.* Even if Barth's federal constitutional claims had merit, real property must still be assessed, and, until the new regulations are in place, must be assessed under the present system. *See Whitley Products*, 704 N.E.2d at 1121. The Court, therefore, will not analyze Barth's federal constitutional claim in this opinion.

2. The Court will refer to these buildings as the Light Manufacturing Building, the Small Shop, and the Light Utility Storage Building.

On January 15, 1999, the State Board held a remand hearing. On April 23, 1999, the State Board issued a final determination on Barth's 133 Petitions. The State Board concluded that Barth failed to present a prima facie case that it was entitled to a correction of the alleged assessment errors and that some of the issues Barth raised would require subjective judgment to resolve, thus rendering the issues improperly brought in the 133 Petition.

On May 21, 1999, Barth filed an original tax appeal with this Court. The Court heard oral arguments on July 11, 2000. Additional facts will be provided as necessary.

## ANALYSIS AND OPINION

### Standard of Review

■■ This Court gives great deference to the final determinations of the State Board when it acts within the scope of its authority. *Wetzel Enters. v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1259, 1261 (Ind. Tax Ct.1998). This Court will reverse a final determination of the State Board only when its findings are unsupported by substantial evidence, or when its final determination is arbitrary, capricious, constitutes an abuse of discretion, or exceeds statutory authority. *Id.*

■■ Moreover, a taxpayer who appeals to this Court from a State Board final determination bears the burden of showing that the final determination was invalid. *Clark v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1230, 1233 (Ind. Tax Ct.1998). The taxpayer must present a prima facie case, which means that the taxpayer's claim must be supported by probative evidence, i.e., evidence that is "sufficient to establish a given fact and which if not contradicted will remain sufficient." *Damon Corp. v. State Bd. of Tax Comm'rs*, 738 N.E.2d 1102, 1106 (Ind. Tax Ct.2000) (citation omitted, internal quotation marks omitted). Once the taxpayer presents a prima facie case, "the burden shifts to the State Board to rebut the taxpayer's evidence and justify its decision with substantial evidence." *Clark*, 694 N.E.2d at 1233.

### Discussion

■■ A taxpayer may file a 133 Petition to correct certain mathematical errors that the taxpayer discovers in its tax duplicate. IND.CODE § 6–1.1–15–12(a)(7).[3] The legislature limited the types of mathematical errors correctable by Indiana Code § 6–1.1–15–12(a)(7) "first, to those errors involving the incorrect use of numbers in determining the assessment; and second, to those errors which can be corrected accurately, with precision, and with rigorous exactness." *Hatcher v. State Bd. of Tax Comm'rs*, 561 N.E.2d 852, 854 (Ind. Tax Ct.1990) (*Hatcher I*). Moreover, "the only errors subject to correction by [a] 133 [Petition] are those which can be corrected without resort to subjective judgment." *Id.* at 857. Thus, a taxpayer who files a 133 Petition must be able to show with probative evidence that the error is an objective error, and not a subjective error. *Id.* at 855.

■■ Barth argues that it is entitled to a reduction in the base rate[4] assessment of its buildings because certain components

3. Indiana Code § 6–1.1–15–12(a)(7) provides, "[A] county auditor shall correct errors which are discovered in the tax duplicate for any one (1) or more of the following reasons: ... There was a mathematical error in computing an assessment." IND.CODE § 6–1.1–15–12(a)(7).

4. To compute the base rates for real property in Indiana, an assessor "[l]ocate[s] the model that best matches the parcel being assessed, and use[s] that model throughout the pricing making adjustments when necessary." IND. ADMIN. CODE tit. 50, r. 2.1–4–3(a) (1992). A building model is comprised of a model description and a model price schedule. *See Barth I*, 699 N.E.2d at 802. Schedule A con-

that actually exist in its subject buildings differ from the models used to assess the buildings. Barth also argues that that it is entitled to a reduction in the base rate assessment of its buildings because the models describe certain components that do not exist in the buildings.

 To be entitled to a base rate adjustment, Barth must submit probative evidence that its buildings do not contain components listed in the models or that its buildings contain components that are not listed in the models. *See Rinker Boat Co. v. State Bd. of Tax Comm'rs*, 722 N.E.2d 919, 922 (Ind. Tax Ct.1999); *Hatcher I*, 561 N.E.2d at 857. Barth then has the burden of proof to ascertain the cost of each component based on the regulations without exercising any subjective judgment. *See Rinker Boat*, 722 N.E.2d at 924, *Barth I*, 699 N.E.2d at 802–3; *Hatcher I*, 561 N.E.2d at 857; *Hatcher v. State Bd. of Tax Comm'rs*, 601 N.E.2d 19, 21–22 (Ind. Tax Ct. 1992) (*Hatcher II*);.

### A. The Heater

 Barth claims it is entitled to an adjustment to the base rate used to assess its Light Manufacturing Building because the heater that actually exists in its building differs from the heater listed in the model. The parties agree that the Light Manufacturing Building contains a hot water radiant heater, whereas the model in Indiana Administrative Code tit. 50, r. 2.1–

4–7(b) lists a "[g]as fired, forced air" heater. 50 IAC 2.1–4–7(b). (Pet'r Br. at 7; Resp't Br. at 6.) Because Barth's building does not contain a gas fired, forced air heater, Barth asks that $3.55 per square foot be deducted from the appropriate base rate.[5] (Pet'r Br. at 6–7.) Barth, however, offers no evidence of the cost of the hot water radiant heater that actually exists in its building.[6] Because Barth failed to meet its burden of proof with respect to the cost of the heater in its building, subjective judgment would be required to correct the alleged error, which is not allowed in a 133 Petition. *See Rinker Boat*, 722 N.E.2d at 924. Accordingly, the State Board did not act arbitrarily and capriciously when it denied relief to Barth on this issue.

### B. The Windows

 The Court next considers whether Barth is entitled to an adjustment to the base rate to account for the fact that the Light Manufacturing Building has no windows. The parties agree that Barth's Light Manufacturing Building has no windows, (Pet'r Br. at 7–8; Resp't Br. at 13–15), despite the fact that the GCI Light Manufacturing model lists "25% [ ] Vented steel sash glass windows."[7] 50 IAC 2.1–4–7(b).

 The Unit–In–Place (UIP) Tables list vented steel-sash windows at $21 per square foot.[8] Ind. Admin. Code tit. 50, r.

---

tains base prices for model types. Ind. Admin. Code tit. 50, r. 2.1–4–5 (1992). Schedule C contains modified price schedules for common deviations from the models. *Id.* (Schedule C).

**5.** Schedule C lists the cost for the GCI Light Manufacturing Building model heater at $3.55 per square foot. 50 IAC 2.1–4–5.

**6.** Barth's designated tax representative, Drew Miller of Landmark Appraisals, Inc., argued before the State Board that Barth's heater was like the GCI Truck Terminal Warehouse

model heater, (Joint Ex. A at 22), which is a "gas fired unit heater[ ] with [a] fan." 50 IAC 2.1–4–7(b). The GCI Truck Terminal model does not list the type of heater present in Barth's improvement, thus, Mr. Miller's argument is without merit.

**7.** The "25%" refers to the square-feet wall area·occupied by windows.

**8.** The UIP tables list this as the cost for two different types of steel sash windows that cover 10% or 40% of the square-feet wall area occupied by windows. 50 IAC 2.1–4–10.

2.1–4–10 (1992). Although the model lists windows that cover 25% of wall area, Barth requests a $21 per square foot reduction for 20% of the wall area. (Pet'r Br. at 8.) The UIP Tables do not, however, list a cost for windows that cover 20% *or* 25% of wall area and therefore do not correlate with the GCI Light Manufacturing model. When the UIP Tables do not correlate with the model, the assessing official is required to use subjective judgment to adjust for the difference between the UIP tables and the model. *Hatcher II*, 601 N.E.2d at 22. As stated before, a 133 Petition cannot be used to correct errors that require subjective judgment. *See Rinker Boat*, 722 N.E.2d at 924. As a result, Barth's 133 Petition must fail. Thus, the State Board did not act arbitrarily or capriciously when it denied Barth's 133 Petition on the issue of the windows.[9]

### C. The Exterior Walls

The next issue is whether Barth is entitled to an adjustment to the base rates used to assess the Light Manufacturing Building, the Small Shop, and the Light Utility Building because each of these buildings was assessed for "concrete block exterior walls," whereas the walls that actually exist in the subject buildings differ from the models used to assess the buildings. (Pet'r Br. at 6–7.)

Exterior walls are classified as Type "1," "2," or "3." 50 IAC 2.1–4–3(a). All three of Barth's commercial buildings were assessed as Type 1 walls, (Joint Ex. A at 24, 33, 37), which "denotes concrete block, stucco, tile, wood, aluminum, or metal siding, or equal." 50 IAC 2.1–4–7(b). The GCI Small Shop and Light Utility models

list their Type 1 walls as "[r]einforced concrete block." 50 IAC 2.1–4–7(b).

At trial, Barth submitted photographs of its buildings in an effort to show that the exterior walls of the buildings were not concrete block. (Joint Ex. D.) A taxpayer who submits photographic evidence should provide an explanation of the dispositive features in the photographs. *Heart City Chrysler v. State Bd. of Tax Comm'rs*, 714 N.E.2d 329, 333 (Ind. Tax Ct.1999). Nevertheless, Barth did not identify the types of exterior walls of the buildings shown in the photographs, nor are the photographs self-explanatory. Therefore, the photographs are insufficient to prove that the walls are anything other than Type 1. Accordingly, the State Board did not act arbitrarily and capriciously when it denied Barth's 133 Petition in this instance.

### D. The Partitioning

Barth argues that it is entitled to an adjustment to the base rates used to assess the Light Manufacturing Building, the Small Shop, and the Light Utility Building because the partitioning in all three buildings differs from the models used to assess them. The parties do not dispute that the partitioning in all three of Barth's buildings differs from the models used to assess them. (Pet'r Br. at 6–7; Resp't Br. at 11, 21, 23.)

Barth points to the model cost schedules in Schedule C and requests that each of the following costs be subtracted from the respective base rates: $0.75 per square foot for the Small Shop, $0.35 per square foot for the Light Utility Building, and $0.40 per square foot for the Light Utility Building. (Pet'r Br. at 6.) Barth, however, offers no objective evidence quantifying

---

**9.** The State Board argues that the regulations do not provide for the use of the UIP Tables to calculate the cost of windows in a 133 Petition. (Resp't Br. at 14, 30–31.) Because

Barth has not presented specific evidence to show that the cost of its windows can be objectively ascertained, the Court need not discuss the State Board's argument here.

the extent to which the partitioning in the subject buildings differs from the model. In the absence of such evidence, subjective judgment—which is not permitted in a 133 Petition—is required to determine how the subject partitioning differs from that of the models. *See Rinker Boat,* 722 N.E.2d at 924. Thus, the State Board did not act arbitrarily and capriciously when it denied Barth's 133 Petition in this instance.

### E. The Floor Finish

 Barth also claims it is entitled to an adjustment to the base rate assigned to the Small Shop because the existing floor finish differs from that of the model. Barth argues that the Small Shop floor finish differs from the model floor finish, but it does not specify how it differs. (*See* Pet'r Br. at 5; Joint Ex. C.) The State Board contends that the Small Shop floor is covered by linoleum in the office and is concrete throughout the rest of the building and, therefore, the Small Shop assessment comports with the GCI Small Shop model. (Resp't Br. at 19.) The GCI Small Shop model presumes a floor that is "90% metallic floor hardener[,] 10% vinyl composition tile." 50 IAC 2.1–4–7(b). Barth has not shown how its flooring differs from that in the model,[10] therefore, this Court determines that the State Board did not err when it denied relief on this issue.[11]

### F. The Wall Height

Barth's final issue is whether it is entitled to an adjustment to the base rate assigned to its Small Shop because the building is "unfinished" rather than "semi-finished" as provided for in the model. Specifically, Barth alleges that interior finish does not exist for at least ninety percent of the Small Shop, therefore, the Small Shop wall height should be calculated using the "unfinished portion" of Schedule C. (Pet'r Br. at 5.) The State Board contends that the Small Shop was correctly assessed as "semi-finished" because the office and restroom have acoustical tile ceilings and linoleum floors. (Resp't Br. at 18–20.) Furthermore, the State Board contends that determining whether a building is unfinished or semi-finished requires subjective judgment and is therefore outside the scope of Barth's 133 Petition. (Resp't Br. at 16–18.)

 An assessor uses objective judgment if he merely verifies the existence of a component "through a visual inspection." *See Hatcher I,* 561 N.E.2d at 857. On the other hand, an assessor uses subjective judgment when, for example, he evaluates the design and quality of the building's interior. *Bender v. State Bd. of Tax Comm'rs,* 676 N.E.2d 1113, 1115 (Ind. Tax Ct.1997). In determining whether a building's interior is "unfinished" or "semi finished," an assessor not only verifies the existence of paint and tile, but must also decide whether the finish is "very minimal," whether it covers "most of the interior," and whether it "generally" consists of paint and tile. 50 IAC 2.1–4–3(a). The latter decisions involve subjective judgments of design and quality—judgments

---

10. The only evidence that Barth submits to support its argument is the testimony of Miller: "The assessment on [the Small Shop] ... includes costs for features that do not exist in the [ ] building. These features include the following: [ ] costs for floor finish which the [building] does not have." (Joint Ex. C.) This so-called evidence has no probative value at all. *See Hoogenboom–Nofziger v. State Bd. of Tax Comm'rs,* 715 N.E.2d 1018, 1023 (Ind. Tax Ct.1999).

11. During oral arguments, counsel for Barth claimed that the floor finish in the Small Shop covered only four percent of the floor, not ten percent as listed in the model. (Tr. at 14.) Assuming that this claim is true, Barth still fails to submit objective evidence of what the cost should be for the floor finish that actually exists in the Small Shop.

that cannot be challenged in a 133 Petition. *Bender*, 676 N.E.2d at 1115. Accordingly, the State Board did not act arbitrarily or capriciously when it denied Barth's 133 Petition in this instance.

## Conclusion

Barth fails to show that it is entitled to adjustments to the base rates used to assess its buildings. For the foregoing reasons, the Court AFFIRMS the final determination of the State Board of Tax Commissioners.[12]

---

**12.** The State Board argues in the alternative that the holding in *Town of St. John*, 702 N.E.2d at 1039–40, prohibits Barth from seeking "absolute and precise exactitude as to the uniformity and equality of each *individual* assessment." (Resp't Br. at 27 (emphasis in original).) In particular, the State Board argues that Barth cannot look outside the respective model schedules originally used to assess its subject buildings to prove component costs. (Resp't Br. 27–31.) Because Barth fails to show that it is entitled to any adjustments, the Court need not analyze the State Board's alternative argument except to say that a taxpayer is entitled to a fair application of the regulations in assessing his or her property.