WATERFURNACE INTL.,
INC., Petitioner,

v.

DEPARTMENT OF LOCAL GOVERN-
MENT FINANCE,[1] Respondent.

No. 49T10–0005–TA–71.

Tax Court of Indiana.

April 23, 2004.

1. The State Board of Tax Commissioners (State Board) was originally the Respondent in this appeal. However, the legislature abolished the State Board as of December 31, 2001. 2001 Ind. Acts 198 § 119(b)(2). Effective January 1, 2002, the legislature created the Department of Local Government Finance (DLGF), see Indiana Code Annotated § 6–1.1–30–1.1 (West Supp.2003) (eff. 1–1–02); 2001 Ind. Acts 198 § 66, and the Indiana Board of Tax Review (Indiana Board). IND.CODE ANN. § 6–1.5–1–3 (West Supp.2003) (eff. 1–1–02); 2001 Ind. Acts 198 § 95. Pursuant to Indiana Code Annotated § 6–1.5–5–8, the DLGF is substituted for the State Board in appeals from final determinations of the State Board that were issued before January 1, 2002. IND.CODE ANN. § 6–1.5–5–8 (West Supp. 2003) (eff. 1–1–02); 2001 Ind. Acts 198 § 95. Nevertheless, the law in effect prior to January 1, 2002 applies to those appeals. A.I.C. 6–1.5–5–8. See also 2001 Ind. Acts 198 § 117. Although the DLGF has been substituted as the Respondent, this Court will still reference the State Board throughout this opinion.

David L. Pippen, Indianapolis, IN, Attorney for Petitioner.

Steve Carter, Attorney General of Indiana, Joel Schiff, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

■ Waterfurnace International, Inc. (Waterfurnace) appeals the State Board of Tax Commissioners' (State Board) final determination valuing its real property for the 1998 tax year. The issue for the Court to decide is whether the State Board erred when it assessed Waterfurnace's improvement using the General Commercial Industrial (GCI) schedule as opposed to the General Commercial Kit (GCK) schedule.[2]

## FACTS AND PROCEDURAL HISTORY

Waterfurnace owns land and improvements in Fort Wayne, Indiana. The improvement at issue has a 100,378 square foot section of area used for warehousing. The local assessing officials assessed that section using the GCI schedule.

Waterfurnace challenged its assessment by filing a Form 130 Petition for Review of Assessment with the Allen County Board of Review (BOR). In its appeal, Waterfurnace argued that its improvement should have been assessed using the GCK schedule. The BOR, however, denied its claim. Waterfurnace appealed the BOR's deter-

mination to the State Board. After conducting an administrative hearing, the State Board also denied Waterfurnace's claim.

On May 15, 2000, Waterfurnace initiated an original tax appeal. The parties stipulated to the record and, on April 10, 2001, this Court heard their oral arguments. Additional facts will be supplied as necessary.

## ANALYSIS AND OPINION

### Standard of Review

■ The Court gives great deference to the State Board's final determinations when the State Board acts within the scope of its authority. *Hamstra Builders, Inc. v. Dep't of Local Gov't Fin.*, 783 N.E.2d 387, 390 (Ind. Tax Ct.2003). Accordingly, this Court reverses final determinations of the State Board only when those decisions are unsupported by substantial evidence, are arbitrary or capricious, constitute an abuse of discretion, or exceed statutory authority. *Id.* When appealing to this Court from a State Board final determination, the taxpayer bears the burden of showing that the final determination is invalid. *Id.*

### Discussion

■ Waterfurnace argues that the State Board erred in using the GCI as opposed to the GCK schedule when it assessed its improvement. The State Board claims that Waterfurnace failed to demonstrate that its improvement qualified for GCK pricing. The State Board, however, is incorrect.

---

**2.** In addition, Waterfurnace raises various state and federal constitutional claims that this Court has declined to reach in previous cases. *See, e.g., Barth, Inc. v. State Bd. of Tax Comm'rs,* 756 N.E.2d 1124, 1127 n. 1 (Ind. Tax Ct.2001). Because Waterfurnace's claims and supporting arguments are identical to those previously rejected by the Court, the Court will not address them.

The GCK schedule is used for "valuing preengineered and predesigned pole buildings which are used for commercial and industrial purposes." IND. ADMIN. CODE tit. 50, r. 2.2–10–6.1(a)(1)(D) (1996). Specifically, it "value[s] the base building on a perimeter area ratio basis and adjust[s] the value based on the various individual components of the building." *Id.* The GCK schedule provides pricing for components such as: insulation; interior liner; 24 to 20 gauge steel siding and roofing; and finished, semi-finished, and unfinished interior occupancies. *See* IND. ADMIN. CODE tit. 50, r. 2.2–11–6 (Schedule A.4) (1996).

At the administrative hearing, Waterfurnace's property tax consultant, Timothy Boyce (Boyce), presented interior and exterior photographs of the improvement and explained how those photographs showed components that qualified the building for GCK pricing. (*See* Pet'r Exs. 1, 2; Resp't Br. at 14–16.) Specifically, Waterfurnace's evidence indicated that its improvement has: (1) 26–gauge exterior metal walls; (2) interior metal walls with 4–inch vinyl insulation; and (3) unfinished interior flooring, ceilings, and sidewalls.

By comparing the features of its improvement with those listed in the regulations, Waterfurnace established that its improvement should have been assessed

under the GCK schedule. *See LDI Mfg. Co. v. State Bd. of Tax Comm'rs,* 759 N.E.2d 685, 688 (Ind. Tax Ct.2001). Thus, the burden shifted to the State Board to come forward with probative evidence to rebut Waterfurnace's showing. *See id.*

At the administrative hearing, the local assessing official testified that "[t]he only thing that is actually economical [in the improvement's construction is its] siding" and, based on his comparison with components listed in the "kit building bulletin," the improvement "simply d[id] not qualify as a kit building." [3] (Resp't Br. at 19 (footnote added).) The official further testified that, in any event, any variations from the GCI schedule were accounted for in the building's grade factor of "D+1." (*See* Resp't Br. at 20.)

In its final determination, the State Board held that the improvement did not qualify for GCK pricing. More specifically, it found that the improvement had a 3–foot high wall on its northwest corner (to retain grade) and a rubber roof system that were not listed in the GCK schedule. [4] (*See* Stip. R. at 28.)

The State Board failed to rebut Waterfurnace's evidence. Indeed, the State Board made no attempt to provide substantive evidence as to how the roofing

---

**3.** Prior to the promulgation of the 1995 GCK schedule, light pre-engineered buildings (i.e., "kit buildings") were assessed under the GCI schedule, and received a 50% base rate reduction. *See* IND. ADMIN. CODE tit. 50, r. 2.1–4–5 (Schedule A.2) (1992). To assist assessors in determining which pre-engineered buildings qualified for the reduction, the State Board issued Instructional Bulletins 91–8 and 92–1 which included construction characteristics common to kit buildings.

**4.** The Court notes that the State Board essentially rejected the evidence presented by the County in finding that "[a]ll testimony and evidence submitted in relation to State Board Bulletin 91–8 and 92[–1] is irrelevant to th[e]

hearing as ... [the] bulletins were repealed with the enactment of 50 IAC 2.2 for the 1995 assessment [i.e., the GCK regulation, *see* footnote 3]." (Stip. R. at 26.) The State Board also determined that this Court's cases related to those bulletins "[we]re obsolete cases[.]" (Stip. R. at 27.) The GCK cost schedule, however, provides minimal detail in describing the essential characteristics of a building that qualifies to be assessed under it. Therefore, although the State Board's bulletins have been superseded by the GCK cost schedule, they still offer guidance—as do this Court's cases construing those bulletins—in determining whether a building may qualify to be assessed under the GCK schedule.

system or 3–foot grade wall disqualified the improvement from being priced using the GCK schedule. *See Barker v. State Bd. of Tax Comm'rs*, 712 N.E.2d 563, 570 (Ind. Tax Ct.1999) (finding that the State Board's denial of the kit adjustment could not be upheld merely on the basis that the subject improvement contained deviations from the basic kit model). The State Board, in the alternative, failed to provide evidence demonstrating how those features could not be accounted for through a grade adjustment[5] under the GCK schedule or that they were accounted for in the "D + 1" grade assigned to the improvement under the GCI schedule.[6] *See King Indus. Corp. v. State Bd. of Tax Comm'rs*, 699 N.E.2d 338, 342 (Ind. Tax Ct.1998) (stating that the State Board "must quantify the effects of a building's deviations from the 'C' grade on the reproduction cost of that building" to support its grade assignment).

Because the State Board failed to support its final determination with sub-stantial evidence, it did not rebut Waterfurnace's evidence indicating that its improvement qualified for assessment under the GCK schedule. *See Hamstra Builders, Inc.*, 783 N.E.2d at 390. Accordingly, the State Board's final determination must be reversed.

## CONCLUSION

For the reasons stated above, the Court REVERSES the final determination of the State Board and REMANDS it to the Indiana Board of Tax Review (Indiana Board)[7] to instruct the local assessing officials to assess Waterfurnace's improvement under the GCK schedule.

---

**5.** The Court has previously held that when an improvement deviates from the model used to assess it, the grade can be adjusted to account for those differences. *Whitley Prods., Inc. v. State Bd. of Tax Comm'rs*, 704 N.E.2d 1113, 1117 (Ind. Tax Ct.1998), *review denied. See also* IND. ADMIN. CODE tit. 50, r. 2.2–10–6.1(f) (1996) (providing that grade is used to adjust the total base reproduction cost in order to account for variations in standards of quality and design).

**6.** The State Board also stated in its final determination that "[Waterfurnace] is correct in stating [that] the subject should not be assessed as a concrete building using the cost schedule found in 50 IAC 2.2–11–6." (Stip. R. at 29.) The State Board then states that "[t]he subject is assessed with 'Wall Type' 1 which denotes [among other things] concrete block" and "there is no change in the assessment[.]" (Stip. R. at 29.) In light of these statements, the Court is puzzled as to how the State Board affirmed the use of the GCI schedule when its own findings seem to indicate its position was to the contrary.

**7.** All cases that would have been remanded to the State Board are now remanded to the Indiana Board of Tax Review (Indiana Board). IND.CODE ANN. § 6–1.1–15–8 (West Supp.2003). Final determinations made by the Indiana Board are subject to review by this Court pursuant to Indiana Code § 6–1.1–15. IND.CODE ANN. §§ 6–1.5–5–7, 3–33–5–2 (West Supp.2003).